UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM FURMAN, Individually and for Others Similarly Situated,<br><br>                                          Plaintiff,<br><br>v.<br><br>ZEMPLEO, INC.,<br><br>                                          Defendant. | Case No.: 23-cv-01777-AJB-DEB<br><br>**ORDER GRANTING JOINT MOTION FOR SETTLEMENT APPROVAL**<br><br>**(Doc. No. 32)** |

    Before the Court is a joint motion to approval the parties' settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA").[1] (Doc. No. 32.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for determination on the papers. For the reasons set forth below, the Court **GRANTS** the parties' joint motion.

---

[1]    "Plaintiffs" refers to Mr. William Furman ("Mr. Furman"), who initially filed the Complaint, and the twelve individuals who filed written consent forms to opt-in. (*See* Doc. Nos. 1 (Complaint); 3 (consent of James M. Bass, David Bean, Patsy J. Earnhardt, Scott Hicks, Thomas M. Lassiter, Frank Meyer, Phung Nguyuen, David Bryant Puckett, and Richard Washburn); 5 (consent of Jefferey Bliss and Darren OHare); 16 (consent of James Hailey).)

## I. PROCEDURAL BACKGROUND

The underlying action involves allegations that Defendant Zempleo, Inc. ("Defendant") misclassified Plaintiffs as exempt from overtime and paid them the same hourly rate for all hours worked, even those over forty hours a week, in violation of § 207(a) and (e) of the FLSA. (Doc. No. 1.) Mr. Furman filed the complaint on September 27, 2023 (*id.*), and twelve additional Plaintiffs subsequently filed written consents opting in (Doc. Nos. 3; 5; 16).

After independently engaging in "heated," "extensive" and "protracted" settlement negotiations, the parties attended an in-person Early Neutral Evaluation ("ENE") mediated by Magistrate Judge Daniel E. Butcher on June 25, 2024, where at the parties reached a settlement in principle. (Doc. Nos. 31; 32-1 at 13.) The Settlement Agreement was executed on September 5, 2024. (Doc. No. 32-2 at 8.) The next day, the parties filed the instant motion.

## II. SETTLEMENT AGREEMENT

The Settlement Agreement before the Court includes the following provisions:

1. Defendant will pay $150,000.00 to Plaintiffs in exchange for dismissal of their claims. (Doc. No. 32-2 ¶ 12.)

2. From the gross settlement amount, $50,000.00 is allocated to Plaintiffs' Counsel for fees, $2,754.87 is allocated to Plaintiffs' Counsel for litigation costs, and $7,500.00 is allocated to Mr. Furman as a service award. (*Id.* ¶¶ 14–15.)

3. The net settlement amount is divided amongst Plaintiffs based on their pro rata share, the exact amounts of which are reflected in Exhibit A of the Settlement Agreement. (*See* Doc. No. 32-2 at 9–10, Exhibit A ("Ex. A").) Pursuant to the Notice, each Plaintiff's pro rata share was formulated based on: (1) the date that individual's opt-in form was filed, (2) the amount of unpaid wages the individual is allegedly owed based on Plaintiffs' Counsel's analysis of applicable pay and timekeeping records, and (3) a comparison of the individual's estimated unpaid

wages with other Plaintiffs to determine each individual's share of the net settlement amount. (Doc. No. 32-2 at 11–14, Exhibit B ("Ex. B"), at 12.)

4. For tax purposes, the Settlement Agreement classifies 50% of each Plaintiff's recovery as unpaid wages, subject to withholding, and 50% as liquidated damages, not subject to withholding. (Doc. No. 32-2 ¶ 14.)

5. Plaintiffs agree to release "all wage and hour claims, causes of action, rights, and demands, including any claims for wages, overtime, distributions, compensation, expenses, interest, actual or compensatory damages, liquidated damages, punitive damages, attorney's fees, and costs against [Defendant] arising from September 27, 2020" through the date of court approval. (*Id.* ¶ 17.) The release includes "any claims that could have been asserted based on the facts alleged in the Lawsuit whether known of unknown." (*Id.*)

6. In addition to the above and in consideration for the $7,500.00 service award, Mr. Furman additionally releases "any and all claims, whether known or unknown, that he may legally release/waive to the greatest extent possible arising from the beginning of his employment through the date the Court approves this agreement." (*Id.*)

7. The parties will attempt to informally resolve any dispute that may arise with regard to interpretation or performance of the agreement prior to seeking court intervention. (*Id.* ¶ 29.) If those efforts are unsuccessful, the parties agree to request an informal conference with Magistrate Judge Daniel E. Butcher. (*Id.*)

### III.  LEGAL STANDARD

"The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved."[2] *Kerzich v. Cnty. of*

---

[2] In fact, the Court notes it is an open question in this Circuit whether court approval of FLSA collective action settlements is required at all. *See, e.g.*, *Evans v. Centurion Managed Care of Arizona LLC*, 686 F. Supp. 3d 880, 883–84 (D. Ariz. 2023) (collecting cases); *Rainford v. Freedom Fin. Network LLC*, No. CV-22-02014-PHX-DWL, 2024 WL 2942715 (D. Ariz. June 11, 2024) (same); *Corbett v. Pub.*

*Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018). District courts in this Circuit frequently apply the Eleventh Circuit's standard, which looks to whether the settlement is "a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Kerzich*, 335 F. Supp. 3d at 1184 (collecting cases applying *Lynn's Food Stores*).

## IV. DISCUSSION

### A. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Medina v. Evolve Mortg. Servs., LLC*, 718 F. Supp. 3d 1162, 1171 (C.D. Cal. 2023) (quoting *Jennings v. Open Door Mktg., LLC*, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018)). "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

Here, the parties dispute (1) whether Plaintiffs were properly classified as exempt from overtime pay, (2) whether Plaintiffs were required to pursue their claims in individual arbitration, (3) whether Defendant acted in good faith or with reckless disregard, (4) the number of hours Plaintiffs worked, and (5) whether Plaintiffs were similarly situated. (Doc. No. 32-1 at 9; Doc. No. 32-3, Declaration of William Hogg ("Hogg Decl."), at ¶¶ 9, 14.)

---

*Employees' Ret. Sys.*, 716 F. Supp. 3d 1006, 1010 (D. Nev. 2024) ("As it stands today, the Court concludes that Rule 41(a)(1)(A) and FLSA's text do not require judicial approval of individual FLSA settlements, and in doing so, it joins the growing number of courts which hold the same."); *Kennedy v. El Centro Reg'l Med. Ctr.*, No. 22-CV-01522-JLS-LR, 2024 WL 1361838, at *2–*4 (S.D. Cal. Mar. 29, 2024) (holding that the FLSA is not "an applicable federal statute" under Rule 41(a)(1)(A), so judicial approval of the settlement is not required before the parties move to dismiss the case). However, recognizing that court approval may not be required, the Court proceeds with analyzing the instant settlement agreement at the parties' request.

The parties investigated Plaintiffs' claims through informal discovery of Plaintiffs' payroll data, timekeeping data, and other documents. (Hogg Decl. ¶ 15.) Defendant continues to deny any wrongdoing. (Doc. No. 32-1 at 6–7.) Accordingly, the Court finds a bona fide dispute exists.

### B. Reasonableness and Fairness of Settlement

"After a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable." *Selk*, 159 F. Supp. 3d at 1172. In light of both the similarities and differences between FLSA collective actions and Rule 23 class actions, "many courts have adopted a totality of circumstances approach" that considers "(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id* at 1173 (collecting cases).

#### 1. Range of Possible Recovery

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Medina*, 718 F. Supp. 3d at 1172 (quoting *Selk*, 159 F. Supp. 3d at 1174).

Here, Plaintiffs' Counsel estimates that Plaintiffs' maximum possible recovery at trial would likely be $392,534.77 in unpaid wages and $392,534.77 in liquidated damages. (Doc. No. 32-1 at 10.) Pursuant to the Settlement Agreement, Plaintiffs will receive $89,745.12, which is approximately 23% of Plaintiffs' maximum potential unpaid wages and "over 11% of that best-possible-day-at-trial result." (*Id.*)

In light of the extent the parties dispute Plaintiffs' claims and the uncertainty of recovery if litigation were to continue, the Court finds that the settlement amount reflects a reasonable compromise over issues that are actually in dispute. *See, e.g.*, *Wonderly v. Youngblood*, No. 116CV01621BAKSKO, 2022 WL 378262, at *8 (E.D. Cal. Feb. 8, 2022)

(finding "approximately 22% of Plaintiff's maximum damages analysis" to be "a reasonable compromise and within the range of reasonableness for wage and hour actions"); *Jennings*, 2018 WL 4773057, at *5 (finding 16% recovery reasonable stating that "the significant discount that the settlement represents compared to the full verdict value of the case is justified by the significant risks at issue, which could preclude all liability"); *Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (finding reasonable a settlement where the range of recovery was between 18.87% and 37.74%). Thus, this factor weighs in favor of approval.

### 2.  Stage of Proceedings and Amount of Discovery Completed

"The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Selk*, 159 F. Supp. 3d at 1177; *see also Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1073 (C.D. Cal. 2023) ("A plaintiff will not be able to broker a fair settlement without having been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.") (citation omitted).

Here, although the parties reached settlement early in the proceedings, the parties argue that the negotiations themselves "spann[ed] nearly a full year." (Doc. No. 32-1 at 13.) Additionally, to evaluate Plaintiffs' claims and facilitate settlement, the parties exchanged "comprehensive information and data through informal discovery," including the payroll and timekeeping records for Plaintiffs. (*Id.* at 8, 13; Hogg Decl. ¶¶ 9, 15.) Finally, the parties assert that both Plaintiffs' Counsel and Defense Counsel "have extensive knowledge of the alleged violative pay practice at issue here from previous litigation involving Zempleo, as they underwent a similar data exchange and settlement discussion for a previous case." (Doc. No. 32-1 at 13.)

Based on the parties' assertions regarding the discovery conducted in the instant and prior litigation regarding Defendant's alleged wage-and-hour violations, the Court finds the parties have sufficient information to reasonably assess the strengths and weaknesses of Plaintiffs' claims. Thus, this factor weighs in favor of approval.

### 3.     Seriousness of Litigation Risks

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Medina*, 718 F. Supp. 3d at 1173 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

As discussed *supra* §§ IV.A and IV.B.1, the parties dispute a number of issues, resolution of which would require the parties to incur "substantial attorneys' fees and costs in conducting formal discovery, motion practice (including hotly contested motions over whether to send court-authorized FLSA notice to additional potential opt-in plaintiffs, motion(s) to compel arbitration, and dispositive motions), trial preparation, and potential appeals." (Doc. No. 32-1 at 11–12.) By settling now, the parties cap the cost of litigation and Plaintiffs receive a sum-certain recovery immediately. (*See* Doc. No. 32-2 ¶ 13 (stipulating that Defendant will deliver checks to Plaintiffs' Counsel within 10 days of court approval and Plaintiffs' Counsel will mail said checks within 7 days of receipt).)

The Court is satisfied that "there is a significant risk that litigation might result in a lesser recovery for the class or no recovery at all." *Selk*, 159 F. Supp. 3d at 1175–76 (internal punctuation and citation omitted). Thus, this factor weighs in favor of settlement.

### 4.     Scope of Release Provisions

"Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. Generally, "[a] settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)).

Though broad in scope, Plaintiffs' release is limited to those claims based upon the facts set forth in the Complaint. (Doc. No. 32-2 ¶ 17.) Because the release grounds itself in

the factual allegations of the Complaint, the Court is satisfied that the release does not force Plaintiffs to forfeit unrelated claims. *See, e.g.*, *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (approving a similar release and collecting cases); *Selk*, 159 F. Supp. 3d at 1178–79 (approving a similar release).

In exchange for $7,500.00, Mr. Furman additionally agrees to release any claims against Defendant "arising from the beginning of his employment through the date the Court approves th[e Settlement A]greement." (Doc. No. 32-2 ¶ 17.) Although this release extends beyond the FLSA claims at issue, the separate payment Mr. Furman is to receive in addition to his pro-rata share of the settlement fund justifies the broad release. *See Selk*, 159 F. Supp. 3d at 1179 (approving a similar release where the plaintiff received an additional $5,500.00).

Although this factor does not weigh heavily in favor of approval, the Court does not find that the release provisions in the Settlement Agreement make the agreement as a whole unreasonable.

### 5. Opinion of Counsel and Participating Plaintiffs

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As such, "the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Selk*, 159 F. Supp. 3d at 1176 (internal punctuation and citation omitted).

Here, Plaintiffs are represented by Josephson Dunlap LLP, which Plaintiffs' Counsel asserts is "regarded as a leading private plaintiff's firm in employment class and collective actions." (Hogg Decl. ¶ 6.) Specifically, the lead attorney for Plaintiffs—Mr. William Hogg—is a senior attorney with 10 years of experience, specializing in wage-and-hour litigation pursuant to the FLSA and similar state laws. (*Id.* ¶ 5.) In light of his significant experience with wage-and-hour claims generally and with claims against Defendant in

particular, Plaintiffs' Counsel views this settlement as "an excellent result for the Plaintiffs given the risks and costs associated with continued litigation." (*Id.* ¶ 10.)

Additionally, none of the twelve opt-in Plaintiffs have filed objections.

Considering both Plaintiffs' Counsel's support of the settlement and the lack of any objections by Plaintiffs, this factor weighs in favor of approval.

### 6. Possibility of Fraud or Collusion

In determining reasonableness, courts scrutinize for "explicit collusion" and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain [plaintiffs] to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Here, the parties were engaged in "heated settlement negotiations for the better part of a full year," and the eventual settlement was only reached with the help of Magistrate Judge Daniel E. Butcher. (Doc. No. 32-1 at 15.) Reaching settlement through court-facilitated mediation supports the conclusion that the process was not collusive. *Cf. Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015) ("Participation in mediation prior to a settlement tends to support the conclusion that the settlement process was not collusive."). Additionally, the damages calculations, settlement amount, and allocation plan were derived from Plaintiffs' individual pay and timekeeping records. (Doc. No. 32-1 at 15.) The grounding of each Plaintiffs' recovery in analysis of this data "guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

Having found no indications, either explicit or implicit, of collusion or fraud, this factor weighs in favor of approval.

### 7. Conclusion

Having considered the relevant factors, the representations of the parties, and the docket as a whole, the Court concludes that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA coverage.

///

///

### C. Reasonableness of Plaintiffs' Counsel's Requested Fees & Costs

The FLSA contemplates an award of "reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Here, the Settlement Agreement allocates $50,000.00 for Plaintiffs' attorney's fees and $2.754.87 for litigation costs. (Doc. Nos. 32-1 at 7, 15–19; 32-2 ¶ 15; Hogg Decl. ¶ 12.)

"In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). However, "the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1181); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55 (listing factors courts may consider). "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022).

In light of the risks associated with continued litigation and the recovery obtained for Plaintiffs, both discussed *supra* §§ IV.A, IV.B.1 and IV.B.3, and considering the contingency basis of Plaintiffs' representation, the Court finds $50,000.00 attorney's fee award a reasonable percent of the fund. Although above the benchmark, district courts in this Circuit have consistently approved similar awards in FLSA collective actions. *See, e.g.*, *Anspach v. 68-444 Perez, Inc.*, No. EDCV192184JGBSPX, 2022 WL , at *6 (C.D. Cal. Apr. 21, 2022) (45%); *Shafer v. Red Tie, LLC*, No. CV 20-5726 PSG (PVCX), 2022 WL 22879648, at *6 (C.D. Cal. Nov. 21, 2022) (45%); *McKinnon v. City of Merced*, No. 118CV01124NONESAB, 2020 WL 4813206, at *15 (E.D. Cal. Aug. 19, 2020), report and recommendation adopted, No. 118CV01124NONESAB, 2020 WL 5658363 (E.D. Cal. Sept. 23, 2020) (42.85%); *Kerzich v. Cnty. of Tuolumne*, No. 116CV01116DADSAB, 2019

WL 1755496, at *7 (E.D. Cal. Apr. 19, 2019) (28%); *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-CV-04519-BLF, 2019 WL 3302812, at *6 (N.D. Cal. July 23, 2019) (30%).

Moreover, the lodestar analysis supports the reasonableness of these fees. Josephson Dunlap LLP attorneys and staff billed 74.2 hours at locality-adjusted rates for this District.[3] (Hogg Decl. ¶¶ 13, 18–22.) Specifically, Mr. Hogg billed $40,731.97 (68.1 hours at an adjusted hourly rate of $575) and three paralegals billed $1,122.28 (6.1 hours at an adjusted hourly rate of $183.98), for a combined total of $41,854.25. (*Id.*) Mr. Hogg additionally avers that he exercised "billing judgment to reduce time entries that might be viewed by the Court as excessive or duplicative, or that were billed by attorneys who intended to but ultimately did not apply for admission *pro hac vice* in this matter." (Hogg Decl. ¶ 13.) The resulting lodestar multiplier is approximately 1.19, which is an upward adjustment of less than the percentage-of-fund adjustment reflected by the one-third request.

Thus, the Court finds the stipulated one-third percent of the recovery reasonable and **APPROVES** the Settlement Agreement with regard to attorneys' fees.

### D.    Litigation Costs

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Medina*, 718 F. Supp. 3d at 1177 (awarding $9,500 in costs for an FLSA collective action). The Settlement Agreement allocates $2,754.87 to reimburse Plaintiffs' Counsel for litigation costs incurred in attending the ENE ($2,629.77), PACER search costs ($0.10), and anticipated mailing costs to send settlement checks to Plaintiffs via Priority Mail ($125.00). (Doc. Nos. 32-1 at 7; 32-2 ¶ 15; Hogg Decl. ¶ 17.) The Court finds these expenses reasonable and of the nature typically billed to paying clients, particularly considering that the expenses center on Mr. Furman

---

[3]    From the Court's analysis, the values and calculations provided in the instant motion and supporting declaration have slight errors, which result in a multiplier five-hundredths larger than that the Court calculates. For accuracy, the Court relies upon the data provided in the billing records rather than Plaintiffs' Counsel's recitations of that data.

and Mr. Hogg's attendance at the ENE, which resulted in settlement. Accordingly, the Court **APPROVES** the requested $2,754.87 in litigation costs.

### E. Mr. Furman's Service Award

"At its discretion, a district court may award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class." *Selk*, 159 F. Supp. 3d at 1181.

Here, the Settlement Agreement allocates $7,500.00 to Mr. Furman, in addition to his pro rata share of the settlement, as a service award. (Doc. No. 32-2 ¶ 14.) The parties argue that the award is reasonable to compensate Mr. Furman for his efforts advancing the litigation, for "taking on significant risk in suing his employer," and for executing a wider release of claims. (Doc. No. 32-1 at 20.) Although the parties did not provide documentation of the precise amount of time and effort Mr. Furman expended, it is clear that all Plaintiffs benefitted from Mr. Furman's decision to file suit and his participation in the action, including his participation in a 6.5-hour ENE that resulted in this settlement. Additionally, Mr. Furman assumed the risk of being publicly identified as having sued his employer. *See Millan*, 310 F.R.D. at 613 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)) ("Incentive awards for class representatives 'are fairly typical in class action cases' and appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk.'"). Finally, the award is similar to those approved in other FLSA collective actions. *See Medina v. Evolve Mortg. Servs., LLC*, 718 F. Supp. 3d 1162, 1178 (C.D. Cal. 2023) (collecting cases where $7,000.00 to $7,500.00 was awarded as reasonable).

Accordingly, the Court **APPROVES** the requested $7,500.00 incentive award for Plaintiff William Furman.

### IV. CONCLUSION

For the reasons stated above, the Court **APPROVES** the instant settlement agreement and **GRANTS** the parties joint motion (Doc. No. 32). The parties are **DIRECTED** to file a Joint Motion for Dismissal of the action no later than one week from

the docketing of this Order. If the parties intend Magistrate Judge Daniel E. Butcher to retain jurisdiction over enforcement of the Settlement Agreement, the parties are advised to fully execute the requisite Consent form and lodge it with the Clerk's Office pursuant to Civil Local Rule 73.1 in advance of filing the Joint Motion for Dismissal.

**IT IS SO ORDERED.**

Dated: December 9, 2024

Hon. Anthony J. Battaglia
United States District Judge